## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID POLKEY** | **CIVIL ACTION** |
| **VERSUS** | **NO.    15-4077** |
| **N. BURL CAIN, WARDEN** | **SECTION "A"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

Petitioner, David Polkey, is an inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    In 2006, he was charged by grand jury indictment with second-degree murder.[1]    On March 22, 2007, a jury found him guilty as charged.[2]    His

---

[1] State Rec., Vol. 1 of 7, Grand Jury Indictment.

[2] State Rec., Vol. 5 of 7, Minute Entry, 3/22/07; *see also* State Rec., Vol. 3 of 7, Jury Verdict.

motion for a new trial and for post-verdict judgment of acquittal were denied.    On May 29, 2007, he was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.[3]

On direct appeal, Polkey asserted that the trial court erred in refusing to charge the jury properly on justifiable homicide.    On March 26, 2008, the Louisiana First Circuit Court of Appeal affirmed the conviction and sentence.[4]    On February 6, 2009, the Louisiana Supreme Court denied his application for a writ of certiorari.[5]

On August 27, 2009, Polkey filed an application for post-conviction relief with the state district court.[6]    In that application, he raised the following claims:    (1) he was denied the right to be informed of the nature of the charges against him based on an invalid indictment; (2) the evidence was insufficient to convict him; (3) he was denied a fair trial when the trial court refused to have produced video surveillance recordings to support his self-defense theory that he acted in defense of another individual; (4) he was denied effective assistance of trial counsel for failing to investigate and challenge the deficiencies in the indictment; and (5) general unspecified violations of the Fourth, Fifth, Sixth and Fourteenth

---

[3] State Rec., Vol. 5 of 7, Minute Entry, 5/29/07; *see also* State Rec., Vol. 2 of 7, Sentence.

[4] *State v. Polkey*, 2007-KA-2193 (La. App. 1st Cir. 3/26/08), 978 So.2d 1261 (Table). State Rec., Vol. 5 of 7.

[5] *State v. Polkey*, 2008-KH-0969 (La. 2/6/09), 999 So.2d 771.

[6] State Rec., Vol. 3 of 7, Uniform Application for Post-Conviction Relief.

Amendments and Article 1 of the Louisiana Constitution.[7]    On September 29, 2009, the state district court ordered Polkey to supplement his application with a copy of the judgment of conviction and sentence.    Polkey did so by motion to supplement signed December 24, 2009.    On August 13, 2010, the state district court ordered an answer to the application as well as further supplementation by Polkey with written reasons explaining why he failed to raise the claims (except for ineffective assistance of counsel) on appeal.[8]    On September 15, 2010, the State filed a formal answer.    The court appointed conflict counsel to represent Polkey in advance of a scheduled evidentiary hearing on the application.    On October 12, 2010, Polkey filed written reasons in response to the court's order.    At Polkey's request, the February 2011 hearing was continued to May 2011 and then again to September 2011.

In September 2011, Polkey's counsel filed a subpoena duces tecum requesting production of surveillance videos and fingerprint evidence.    Counsel also requested a continuance and the hearing was reset for December 2011.    Counsel for Polkey requested and was given another continuance until February 2012.    Polkey also filed his own subpoena duces tecum for production of surveillance recordings for the February 2012

---

[7]  State Rec., Vol. 5 of 7, State District Court Post-Conviction Relief Order signed August 13, 2010.

[8]  On September 2, 2010, the Louisiana First Circuit denied Polkey's writ application noting, "[w]e have been advised by the judge's office that the district court is proceeding toward disposition of relator's application for postconviction relief and a status conference is set for November 29, 2010."   *State v. Polkey*, 2010-KW-1358 (La. App. 1st Cir. Sept. 2, 2010).    State Rec., Vol. 5 of 7.

hearing.[9]   Counsel for Polkey filed another request for a continuance and the hearing was reset for April 23, 2012.

On April 9, 2012, a motion to supplement the post-conviction relief application was filed through counsel and allowed by order of the court signed April 16, 2012.   The application was amended to assert an additional ground for ineffective assistance of trial counsel (*i.e.*, trial counsel performed deficiently in failing to have the murder weapon fingerprinted).[10]   The matter was continued at the State's request until June 2012.   On June 13, 2012, the State filed a memorandum in opposition to the post-conviction relief application.   On June 29, 2012, Polkey's counsel filed additional written reasons explaining why he failed to raise his post-conviction claims on direct appeal and generally faulting *appellate* counsel in addition to trial counsel.   On January 10, 2013, the State filed a response to the amended application for post-conviction relief addressing the claims of ineffective assistance of trial and appellate counsel.

Following several more resettings, substitution of indigent defender counsel and additional discovery, an evidentiary hearing was finally held on January 3, 2014 and February 19, 2014.   The state district court assigned oral reasons for its decision denying post-conviction relief.[11]   On March 7, 2014, the district court rendered a written judgment

---

[9]   State Rec., Vol. 6 of 7.

[10]   State Rec., Vol. 6 of 7, Motion to Supplement Post-Conviction Relief Application.

[11]   State Rec., Supp. Vol. 1 of 1, February 19, 2014, Transcript of Evidentiary Hearing,

dismissing the claims.[12]   Polkey's related supervisory writ application was denied by the Louisiana First Circuit Court of Appeal without reasons on June 30, 2014.[13]   His writ to the Louisiana Supreme Court was denied without stated reasons on July 31, 2015.[14]

On August 31, 2015, Polkey filed his federal application for *habeas corpus* relief.[15]   In his petition, Polkey raises the following grounds for relief: (1) he was denied a fair trial when the trial court refused to give a requested jury charge on justifiable homicide; (2) he was denied the right to be informed of the nature of the charges against him due to an invalid indictment; (3) the evidence was insufficient to convict him; (4) he was denied a fair trial when the trial court refused to have produced video surveillance recordings to support his defense theory; (5) he was denied effective assistance of trial counsel for failing to investigate and challenge the deficiencies in the indictment, failing to object to the jury instruction, and failing to conduct adequate pretrial investigation and interview witnesses;

---

pp. 48-82.

[12]   Rec. Doc. 4, p. 43-44, Judgment.   In response to the Court's order of September 27, 2016, the State supplemented the record to include previously omitted post-conviction records, including the transcripts of the evidentiary post-conviction relief hearings.   The written Judgment, however, was not included, but was attached to Polkey's federal application.

[13]   State Rec., Supp. Vol. 1 of 1, *State v. Polkey*, 2014-KW-0561 (La. App. 1st Cir. June 30, 2014).

[14]   *State ex rel. Polkey v. State*, 2014-KH-1644 (La. 7/31/15), 174 So.3d 657. State Rec., Supp. Vol. 1 of 1.

[15]   Rec. Doc. 4, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

and (6) he was denied effective assistance of appellate counsel for omitting claims on appeal.[16]

The State concedes that Polkey has exhausted his remedies in the state courts and that the federal application is timely.    The State argues that the claims should be dismissed on the merits.[17]

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or

---

[16] Polkey designated seven claims for relief.    However, claims five and seven both alleged different grounds for ineffective assistance of trial counsel, which have been grouped together for ease of reference.

[17] Rec. Doc. 12.

mixed questions of law and fact, a federal court must defer to the decision on the merits of

such a claim unless that decision "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States."

28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have

independent meaning."   *Bell v. Cone*, 535 U.S. 685, 694 (2002).   A state-court decision is

"contrary to" clearly established precedent if the state court applies a rule that contradicts

the governing law set forth in the United States Supreme Court's cases or if the state court

confronts a set of facts that are materially indistinguishable from a decision of the United

States Supreme Court and nevertheless arrives at a result different from United States

Supreme Court precedent.   *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v.

Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).   An "unreasonable

application" of [United States Supreme Court] precedent occurs when a state court

"identifies the correct governing legal rule... but unreasonably applies it to the facts of the

particular state prisoner's case."   *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct.

1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect

one." *Bell*, 535 U.S. at 694.   A state court's merely incorrect application of Supreme Court

precedent simply does not warrant *habeas* relief.   *Puckett v. Epps*, 641 F.3d 657, 663 (5th

Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an

incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").   "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.   *Harrington v. Richter*, 562 U.S. 86, 102 (2011).   Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."   *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

*Facts*

The following facts were established at trial and summarized by the Louisiana First Circuit Court of Appeal:

> On February 13, 2006, defendant repeatedly struck the victim, Troy Lawson, with a bat while the victim was inside the home of defendant.   The victim suffered a depressed skull fracture during the attack, resulting in his death. Defendant's friends, Sean Patrick Ryan, Joyce Siebers, and Rene Paul Matherne, were present at the time of the attack.

> Ryan testified the victim had been at defendant's home the night before the killing.   According to Ryan, on the day of the attack, Ryan and Siebers found the victim waiting outside of defendant's home when they arrived there after giving one of Ryan's friends a ride to work.   The victim asked for Matherne, stating he "had called him to come over."   The victim was calm and not upset or angry.   Ryan used a key to let himself, Siebers, and the victim into the house.   Ryan indicated he had lived at defendant's house at the end of 2005, still occasionally slept there, and had slept there the previous night.   Ryan indicated he had permission from defendant to go into the house.

According to Ryan, once inside the house, he, Siebers, and the victim talked. Defendant arrived a minute or two later and went into the house.   He spoke to Siebers, and they went outside briefly, but returned.   Matherne then knocked on the back door.   The victim and defendant both went to the back door, and then Ryan heard "a scuffle go down."   On a surveillance camera, Ryan saw Matherne "swinging" or "fighting."   Ryan also saw the victim on the floor, and saw defendant hit him with a bat in the shoulder area.   Ryan then walked toward the back and as he approached the victim, he saw Matherne kicking the victim.   Ryan asked Matherne what was going on, and Matherne and defendant both stated that the victim had raped a girl and stolen $16,000 from Matherne.   Ryan decided to leave and, as he was leaving defendant's house with Siebers, he saw Matherne going through the victim's pockets.   Ryan asked Matherne what he was doing, and Matherne told Ryan to "shut up and help him."

According to Ryan, he next saw defendant at William Bruce's house when they "partied" there later on the date of the attack.   Defendant told Ryan that the victim had come to defendant's house "to take us out."   Defendant told Ryan not to say anything about what had occurred.   Ryan and defendant left Bruce's house together, returned to defendant's house, and picked up a few things, including the bat defendant had used to beat the victim.   At defendant's request, Ryan threw the bat out of the truck window as defendant and Ryan drove near Allied Shipyard.   Ryan never saw the victim with any weapons on the day of the attack.

Ryan indicated that on the night before the attack, he had used crack cocaine, which Matherne had obtained from the victim.   Ryan conceded he was aware that the victim wanted money from Matherne for crack cocaine.

Siebers testified she was dating defendant in February of 2006.   She testified similarly to Ryan concerning how the victim came to be in defendant's house and added that the victim sat in the living room with her and Ryan "having a good conversation."   She indicated defendant arrived almost immediately thereafter.   She saw defendant with a hammer and asked him what he was going to do.   Defendant stated he was "going to beat the f—out of [the victim]."   In response to further inquiry by Siebers, defendant claimed that the victim had raped "a chick and cheated somebody out of dope money." Defendant stated that he was looking for a ball bat.   Siebers told defendant she had a bat in her car and gave him her car keys.   However, because defendant could not unlock Siebers's vehicle, Siebers went outside, removed

the bat from her vehicle, and placed it on the back fender of defendant's truck. Defendant put the bat in the sleeve of his jacket and took it into his house. According to Siebers, after Matherne knocked on the back door, the victim walked to the back door followed by defendant.    The victim told Siebers and Ryan "good-bye" before leaving the living room and did not appear to be mad. Siebers saw the victim shake hands with Matherne on the surveillance camera, and then saw scuffling and heard a pop and a thump.    She then saw Matherne pushing the victim back into the house.    Siebers subsequently saw Matherne searching the victim's vehicle.    She indicated defendant approached her later that day at William Bruce's house and told her not to tell anyone or the police what had happened and that "other guys" that knew the victim would be coming to "kill us."

Siebers conceded she used cocaine at a party at defendant's house on the night before the attack, and that Matherne had obtained the cocaine from the victim. She claimed she did not know that Matherne owed the victim money for the cocaine.

Matherne testified that on February 13, 2006, he walked back to defendant's house and sat in defendant's truck after defendant had dropped him off at a store. Matherne stated that at that time the victim had been his roommate for two or three weeks.    Matherne decided to go into defendant's house, but claimed as he approached the door he saw the victim inside the house, holding the back of his head.    Defendant was beating the victim with a baseball bat. The victim had his back turned to defendant during the attack.    Matherne did not see the victim with a weapon.    Matherne conceded that he kicked the victim, but claimed he only kicked the victim between his ankles and his knees to see if he was still alive.    Defendant told Matherne to "get the mother f---- out of my house," and Matherne and defendant put the victim in his own car. Matherne then drove the car to a garage approximately three blocks away where he abandoned the victim and his car.    Matherne testified that he began walking toward the store when defendant picked him up and told him, "I beat the f----- ni—er."    Matherne denied being in fear of the victim and denied telling defendant that the victim was "out to get [Matherne]."    He also denied going through the victim's pockets.

When initially questioned concerning the victim's death, defendant denied any involvement, stating, "I did not kill no f---- ni-er.    I didn't even hit one." Thereafter, he conceded the victim was at his house, but denied any involvement in his death.    Subsequently, he conceded he hit the victim in the

head with a bat, but claimed he did so only to protect Matherne.    Defendant claimed the victim came to the house to collect a debt owed by Matherne, and Matherne hid in defendant's truck because he was afraid of the victim. Defendant stated the first thing he said to the victim in defendant's house was, "[W]hat is going on, man?    What is happening?"    Defendant claimed he struck the victim with the bat after the victim began fighting with Matherne.[18]

*Analysis*

*A. Special Jury Instruction*

Polkey asserts that the trial court's refusal to read his proposed special jury instruction on justifiable homicide denied him a fair trial, and effectively eliminated part of his justifiable homicide defense (*i.e.*, self-defense against an intruder who made an unlawful entry into a dwelling, La. Rev. Stat. §14:20(A)(4)(a)).

The Louisiana First Circuit Court of Appeal rejected the claim on direct review as follows:

> In his sole assignment of error, defendant argues the trial court erred in refusing to charge the jury on justifiable homicide as provided by LSA-R.S. 14:20(4)(a).
>
> Louisiana Code of Criminal Procedure art. 807 provides:
>
> The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
>
> A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and

---

[18]  State Rec., Vol. 5 of 7, *State v. Polkey*, 2007-KA-2193 (La. App. 1st Cir. 3/26/08), pp. 2-6.

pertinent. It need not be given if it is included in the general charge or in another special charge to be given.

Prior to closing argument, the defense submitted a special jury charge to the trial court, and requested that the jury be instructed, "that a homicide is justifiable when committed by a person lawfully inside a dwelling against a person who has made an unlawful entry into the dwelling and the person committing the homicide reasonably believes that the use of deadly force is necessary to compel the intruder to leave the premises." and that "the homicide shall be justifiable even though the person committing the homicide does not retreat from the encounter." See LSA-R.S. 14:20(4)(a) (prior to amendment by 2006 La. Acts No. 141, §1).

The state objected to the proposed special jury charge as misleading.   The state argued that only defendant claimed that the victim was uninvited into defendant's house; the victim had been present in the house the night before with the same people present when he was killed; defendant never told the victim "you don't belong here, get out"; defendant never asked the victim to leave; and it was implicit in defendant's actions that the victim had authority to be in the house.

The trial court refused the proposed special jury charge, holding:

In reviewing the evidence and the testimony of the witnesses, including that of the defendant, and the circumstances, the Court really has no evidence for which to base this charge or proposed charge on.     There is no indication from any witness, including the defendant, that the victim was unlawfully inside the dwelling, which is the first prong of the charge.     Because he was certainly invited in by, as testified to by everyone, the persons who entered the home first, which are Ms. Siebers, ... Mr. Ryan.     Approximately at the same time the defendant arrived and entered the house and in his own words said, what's up?     That is not exactly an indication to anyone that they are unlawfully present in the home or that he expected them to leave or that he reasonably could be considered to have believed that the use of deadly force was necessary to prevent [the victim] from entering the home or compelling [the victim] to leave.     I just don't think that I can charge the jury with an absence of factual basis, and therefore, I deny the use of that charge.

The trial court correctly refused the proposed special jury charge.     The proposed jury charge was not pertinent because the testimony and other

evidence at trial did not indicate that the victim had made an unlawful entry into defendant's home.

Moreover, even assuming arguendo, that the trial court erred in refusing to give the proposed jury charge, any such error was harmless.    The refusal to give a requested special charge does not warrant the reversal of a conviction unless it prejudices substantial rights of the accused.    *See* LSA-C.Cr.P. art. 921; *State v. Domino*, 97-0261, p. 7 (La. App. 1 Cir. 2/20/98), 708 So.2d 1143, 1147.    In its closing argument, the defense repeatedly argued that defendant was protecting his home when he killed the victim.    Further, the defense stated:

Ladies and gentlemen, the other part of R.S. 14:30 [sic] that [the state] didn't read to you says that a homicide is justifiable when it's committed by a person lawfully inside his dwelling against a person who made an unlawful entry, and [the victim] did not get [defendant's] permission to come in the house.    That was clear from everybody.    He came in on his own.    He wasn't let in by the owner of that house.    And the person committing the homicide reasonably believes that the use of deadly force is necessary to prevent the entry or to compel the intruder to leave.    And that homicide is justified even though the person committing it doesn't retreat.

Under these circumstances, the substance of the proposed special jury charge was clearly placed before the jury by the defense closing argument and, even if the charge was erroneously refused, defendant was not prejudiced thereby. *See Domino*, 97-0261, at p. 7, 708 So.2d at 1147.    Accordingly, this assignment of error is without merit.[19]

The Louisiana Supreme Court denied his related writ application without assigning

additional reasons.

To the extent Polkey argues that the trial court violated Louisiana law when it refused

to give the special jury instruction on justifiable homicide as requested, that claim must fail.

"In conducting habeas review, a federal court is limited to deciding whether a conviction

---

[19]    State Rec., Vol. 5 of 7, *State v. Polkey*, 2007-2193, at *6-7.

violated the Constitution, laws, or treaties of the United States."    28 U.S.C. § 2254(a); *Estelle*

*v. McGuire*, 502 U.S. 62, 68 (1991).    A federal court may not grant *habeas* relief based on an

alleged error in the interpretation or application of state law.    *Estelle*, 502 U.S. at 68; *see*

*also Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir.1994) (a federal court does "not sit as [a]

'super' state supreme court in a habeas corpus proceeding to review errors under state law")

(citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (federal

habeas review does not lie for errors of state law).

     To the extent Polkey raises a cognizable federal claim based on his assertion that the

error denied him a fair trial,[20]  he must show that the state trial court's failure to give the

proposed special jury instruction so infected the entire trial that his resulting conviction for

second-degree murder violated due process.    *See Henderson v. Kibbe*, 431 U.S. 145, 154

(1977) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).    The challenged instruction

must not be viewed in isolation; the *habeas* court should consider the context of the

instructions as a whole as well as the entire trial record.    *Estelle*, 502 U.S. at 72 (citing *Cupp*,

*supra*).    Here Polkey sought to have the trial court charge the jury on justifiable deadly

force used against an intruder on the premises despite, as Polkey concedes, the testimony by

every one of the State's witnesses "that they invited [the victim] into the house."    Rec. Doc.

---

[20]  Although exhaustion is arguably questionable because the record does not reveal
whether it was presented as a federal constitutional claim in the state courts on direct
appeal, this Court may still deny the claim on the merits.    *See* 28 U.S.C. § 2254(b)(2) ("An
application for a writ of habeas corpus may be denied on the merits, notwithstanding the
failure of the applicant to exhaust the remedies available in the courts of the state.").

4-1, pp. 11-12.    The trial court sustained the State's objection that such an instruction would be misleading because there simply was no evidence presented at trial to show that the victim made an unlawful entry into Polkey's home.    The trial court tailored the justifiable homicide instruction based on the evidence presented, and charged the jury on justifiable homicide as follows:

> It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used the same means himself, and when it is reasonably believed that such intervention is necessary to protect the other person.    Thus, if you find, one, that the defendant committed the offense charged while acting in defense of another person, and two, that it reasonably appeared to the defendant that the other person justifiably could have used such means himself; and three, that the defendant reasonably believed that his intervention was necessary to protect the other person; then you must find the defendant not guilty.[21]

Polkey's defense was justifiable homicide in that he was protecting Matherne from the victim.    He was able to present his defense through witness testimony at trial, and as reflected in the charge to the jury, without regard to whether or not the victim was indeed lawfully on the premises.    Considering the context of the trial as a whole and the jury instructions given, the omission of a special justifiable homicide charge regarding deadly force against an intruder did not deny Polkey a fair trial.    He is not entitled to relief on this claim.

---

[21]  State Rec., Vol. 5 of 7, Trial Transcript (March 22, 2007). p. 113.

*B. Invalid Bill of Indictment*

Polkey asserts that the indictment violated his due-process rights because it did not identify the elements of the crime.    He contends the indictment fails to present "any of the essential elements, circumstances/cause of how the crime was committed under LSA-R.S. 14:30.1."    Rec. Doc. 4-1, p. 16.    The state courts rejected the claim on collateral review.

Due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair.    *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir.1986).    The United States Supreme Court has held that an indictment or bill of information is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and affords him protection against double jeopardy.    *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953).

Louisiana law allows the use of "short-form" indictments, and permits a defendant in a criminal proceeding to file a motion requesting a bill of particulars, as was done in Polkey's case, setting forth the specifics of the charge alleged in the indictment.    *State v. Bourque*, 622 So.2d 198, 219 (La. 1993), *overruled on other grounds by State v. Comeaux*, 699 So.2d 16 (La. 1997); *State v. Baylis*, 388 So.2d 713, 719 (La. 1980); *State v. Liner*, 373 So.2d 121, 122 (La. 1979); La. Code Crim. Proc. art. 484.    The indictment in this case complies with the form set out under Louisiana Code of Criminal Procedure article 465(A)(32).    Accordingly,

the indictment was valid and not defective.[22]    Polkey was fairly apprised of the nature of the charge against him and was not prejudiced in his ability to present a defense because of an insufficient indictment.    Accordingly, the state court's denial of relief on the claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

*C. Sufficiency of the Evidence*

Polkey claims that the evidence was insufficient to support his conviction for second-degree murder because the State failed to show that he had specific intent to kill the victim and disprove his theory that he justifiably killed the victim in defense of Matherne.    The state court rejected this claim on post-conviction review, reasoning as follows:

Well you keep telling me that I didn't instruct the jury on justifiable homicide. But I gave a specific instruction on justifiable homicide.    It was requested by Mr. Thomas.    Mr. Thomas also requested additional instructions on the issue of whether Mr. Lawson had had unauthorized entry into Mr. Polkey's home. That's where the dispute was.

The Court specifically made the instruction, according to the transcript, on page 696, "it was justifiable to use force or violence or to kill in defense of another person when it is reasonably apparent that the person attacked could have justifiably used that same means himself, and when its reasonably believed that such intervention is necessary to protect the other person. Thus, if you find:    (1) that the defendant committed the offense charged while acting in defense of another person; and (2) that it reasonably appeared

---

[22]    As a general rule, challenges to the validity of indictments are not cognizable on federal *habeas* review. The United States Court of Appeals for the Fifth Circuit has held that "the sufficiency of a state indictment is not a matter for federal *habeas corpus* relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984) (quoting *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980)).

to the defendant that the other person justifiably could have used such a means himself; and (3) that the defendant reasonably believed that his intervention was necessary to protect the other person, then you must find the defendant not guilty."

As pointed out on appeal, the Court did not instruct the jury that Mr. Lawson's unauthorized entry into Mr. Polkey's home gave Mr. Polkey another legal defense.    The Court of Appeal reviewed the entire record and reviewed that point.    There was no indication, at the trial, that Mr. Lawson's entry was unauthorized.    He was there to do what they all knew he was there to do, which was to get his money.    And he was there, in fact, when Mr. Polkey – I believe my recollection is – Mr. Polkey came home.

His first intent was to hit him with a hammer, but Ms. Siebers ran out and got the bat.    And on the issue of sufficiency of evidence, specifically, was not raised on appeal by Ms. Sollars.    But Mr. Polkey never denied hitting him. Never denied hitting him three times and cracked the bat over his head – on the back of his head.    It was certainly reasonable for the jury, viewed in a light – to view the evidence in a light most favorable to the State, with direct evidence of the altercation – not circumstantial, but direct evidence of witnesses observing the beating – for the jury to conclude that Mr. Polkey had the specific intent to kill Mr. Lawson.    He wasn't there to shake his hand.

To the extent the sufficiency of the evidence is an issue for postconviction relief – and I think, generally, it's not – but because it wasn't raised on appeal, to that extent, I'm going to rule on it.    I'm not going to ignore it because I want to make sure, if there is a writ on this, that I believe that there was sufficient evidence.    I sat through the trial.    Mr. Polkey never denied the altercation which resulted in the head injuries testified to by the examining doctor in the autopsy.

So the – Issue No. 2 that's raised regarding sufficiency of the evidence is denied.[23]

Because a sufficiency of the evidence claim presents a mixed question of law and fact,

---

[23]   State Rec., Supp. Vol. 1 of 1, Post-Conviction Hearing Transcript (2/19/14), pp. 58-61.

this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    For the following reasons, the Court finds that Polkey has made no such showing.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a federal *habeas* court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.    *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).    Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.    *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n. 16).    The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.    *See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S.Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the

19

weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.   *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.   *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.   *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "   *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U .S. 390, 402 (1993) (emphasis added)).   Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."   *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

Under Louisiana law, second degree murder is the killing of a human being when the defendant had a specific intent to kill or to inflict great bodily harm.   La. Rev. Stat. § 14:30.1.

Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act.   La. Rev. Stat. §14:10(1); *State v. Brooks*, 839 So.2d 1075, 1079 (La. App. 2 Cir. 2003) (citing *State v. Lindsey*, 543 So.2d 886 (La. 1989)).   Specific intent may be inferred from the circumstances and from the defendant's actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries.   *State v. Harris*, 812 So.2d 612, 618 (La. 2002); *see also State v. Seals*, 09-1089 (La. App. 5 Cir. 12/29/11), 83 So.3d 285, 306 (citation omitted).

Louisiana law provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.   La. Rev. Stat. § 14:20 (A)(1).   "It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person."   La. Rev. Stat. § 14:22.   The State has the burden of proving that petitioner did not act in self-defense, and the standard of review on federal *habeas* review under *Jackson* is whether a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense or the defense of others.   *Trosclair v. Cain*, No. 12-2958, 2014 WL 4374314, at *7 (E.D. La. Sept. 2, 2014)

(citing *State v. Lilly*, 552 So.2d 1036, 1039 (La. App. 1 Cir.1989)).

Polkey maintains the State failed to prove that he possessed the specific intent to kill the victim.   He argues that the testimony by the State's witnesses, Sean Ryan, Rene Matherne, and Joyce Siebers, all of whom were involved in the incident and received more lenient sentences, should have been discredited, and his testimony (that he did not intend to kill the victim, but rather, only stop him from hurting Matherne) credited.   He further argues that the defense sufficiently proved by Polkey's and Ryan's testimony that his actions were in defense of Matherne, who was being attacked by the victim, and the State failed to disprove his defense theory.

The defense did not dispute that Polkey alone repeatedly struck the victim with a baseball bat, fracturing his skull and killing him.   However, the defense argued that Matherne feared the victim, who was the aggressor, and that Polkey merely acted in Matherne's defense.   Polkey points to his own testimony as well as Ryan's testimony that the victim and Matherne engaged in a physical altercation.   Tellingly, however, *Matherne's* testimony did not support the defense theory.   Matherne denied being in fear of the victim. He testified that as he approached the door he saw the victim, with his back to Polkey, holding the back of his head.   He saw Polkey beating the victim with a baseball bat.   He further testified that the victim was not armed.   Although Polkey suggests that Matherne's "inconsistent" testimony (presumably as it conflicted with his own and Ryan's) should be rejected as untrue, the jury obviously found his testimony credible (with full knowledge of

his participation in the incident, his conviction and sentence, and testimony that he received no deal in exchange for his testimony).    Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal *habeas* court generally will not grant relief.    *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, Civ. Action No. 11–2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, No. 06–6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

Here the record as a whole contains more than sufficient evidence introduced by the State for the jury to have concluded that Polkey possessed the requisite specific intent and that the State disproved Polkey's justifiable-homicide theory.    Matherne, the individual Polkey claimed to be defending from an attack, actually disputed that theory with his testimony.    Furthermore, Siebers testified that Polkey had a hammer and informed her he intended to beat the victim, who had raped "a chick and cheated somebody out of dope money."    At his request, she provided him a baseball bat from her vehicle to use instead. She witnessed no anger or aggression from the victim against Matherne.    Similarly, Ryan testified that the victim was calm, was not upset or angry, and told him that Matherne had asked him to come over.    Ryan also testified that after the incident Matherne and Polkey

told him that the victim had raped a girl and owed money to Matherne.     Ryan testified that he never saw the victim with a weapon.     The jury knew about their participation in the incident as well as their convictions and sentences and still chose to credit their testimony over that of Polkey.     It bears repeating here that this Court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses.     *Jackson*, 443 U.S. at 319; *see also Schlup v. Delo*, 513 U.S. at 330.

When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.     For these reasons, Polkey cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

*D. Surveillance Video*

Polkey asserts that he was denied a fair trial and the opportunity to prove his defense because the trial court "did not have produced the surveillance video [of the incident] from Polkey's house."[24]     The state district court rejected this claim post-conviction, although the transcript of the evidentiary hearing contains no reasons for the ruling specifically with respect to the purported surveillance video.[25]     Nevertheless, the ruling on the merits is entitled to deference on federal *habeas* review.     *See Harrington v. Richter*, 562 U.S. 86, 98–

---

[24]   Rec. doc. 4-1 at 22.

[25]   State Rec., Supp. Vol. 1 of 1, pp. 48-82.

100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

Polkey argues that a defendant is deprived of his defense and a fair trial where the trial court erroneously excludes witness testimony, or in this instance evidence, that would have substantially helped the defense.    Rec. Doc. 4-1, p. 23.    The critical flaw in his argument, however, is that defense counsel did not seek to offer the surveillance video into evidence at trial; in fact, no video existed.[26]    Therefore, the trial court could not possibly have ruled against him to exclude this evidence, thereby denying him a fair trial or the right to present a defense.    Notably, Polkey did not assert that counsel rendered ineffective assistance in this regard.    Moreover, the record contradicts Polkey's assertion that any such video surveillance tape was recovered.    Although he now asserts error in excluding the purported videotape, there was no record evidence that the camera surveillance system at his house had any recording capability, much less that a videotape existed or that the police recovered such evidence from the home.    The witnesses at trial referenced observing the incident from the living room on a camera surveillance monitoring system. Polkey explained during his testimony at trial that he simply had a camera on the back door showing the back of his house that allowed him to see from his living room television monitor

---

[26]   The purported home video should not be confused with the Gaubert's convenience store surveillance video recording sought and obtained by the defense.    *See* State Rec., Vol. 5 of 7, Transcript of Hearing held November 8, 2006, p. 3.

the person at the door.[27]    Sean Ryan, who used to live with Polkey, testified similarly.[28]

Defense counsel likewise confirmed at the evidentiary hearing that there were no video recordings at Polkey's house, only camera surveillance, and that he had asked Polkey about it numerous times.[29]    Accordingly, the state court's finding that Polkey was not denied a fair trial or the right to present a defense based on the trial court's alleged failure to have the surveillance tape from his home produced for trial was neither contrary to nor an unreasonable application of federal law.    This claim does not warrant federal *habeas* relief.

*E. Ineffective Assistance of Trial and Appellate Counsel*

Polkey asserts that trial counsel was ineffective for failing to pursue the motion to quash the indictment, failing to object to the jury instruction, and failing to conduct adequate pretrial investigation and interview witnesses in order to present a competent defense.    He asserts that appellate counsel was ineffective for failing to assert on direct appeal the claims of insufficiency of the evidence and insufficiency of the indictment that was not returned in open court.    The state district court rejected these claims raised on post-conviction relief following an evidentiary hearing.[30]    The appellate courts likewise denied relief.

---

[27]  State Rec., Vol. 4 of 7, Trial Transcript (3/22/07) (David Polkey), p. 35.

[28]  State Rec., Vol. 4 of 7, Trial Transcript (3/21/07) (Sean Ryan), p. 63.

[29]  State Rec., Supp. Vol 1 of 1, Transcript of Evidentiary Hearing (1/31/14), p. 15.

[30]  State Rec., Supp. Vol. 1 of 1, Transcript of Evidentiary Hearing (2/19/14), pp. 80-82.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of

reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected Polkey's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

With respect to trial counsel, Polkey asserts that he failed to file a motion to quash the indictment.    However, the record reflects a motion to quash the indictment was filed by

Polkey, *pro se*, on or about March 5, 2007.[31]    At the hearing held March 19, 2007, defense

counsel voluntarily withdrew the motion as moot, without discussion.[32]    Thus, in essence,

Polkey contends counsel's failure to pursue the motion on his behalf constituted ineffective

assistance.

Because there were no valid grounds to support a motion to quash the indictment,

counsel was not deficient for failing to pursue Polkey's *pro se* motion, particularly where

counsel himself did not file the motion in the first place.    Failure to file a frivolous motion

or lodge a futile objection does not cause counsel's performance to fall below an objective

level of reasonableness.    *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000)

(citing *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998)); *Johnson v. Cockrell*, 306 F.3d

249, 255 (5th Cir. 2002) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).

Furthermore, a decision regarding whether to file a motion to quash is generally a matter of

professional judgment.    *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir.1965).    Here the

record reflects that on April 3, 2006, defense counsel had filed a motion for bill of particulars

and for discovery and inspection in which he sought information regarding the basis for the

charge of second-degree murder and evidence supporting that charge.[33]    For the reasons

previously discussed in connection with the substantive claim, counsel's decision not to

---

[31]   State Rec., Vol. 2 of 7, Motion to Quash Bill of Information.

[32]   State Rec., Vol. 5 of 7, Transcript of Hearing, 3/19/07.

[33]   State Rec., Vol. 1 of 7.

pursue Polkey's motion to quash the obviously valid bill of indictment on grounds that it failed to include the essential elements of the crime, and instead rely on a bill of particulars for the State to provide specifically the nature and cause of the charge, constituted proper and effective advocacy on Polkey's behalf.[34]

Polkey next contends trial counsel should have objected to the jury instructions. Although he does not elaborate, it may be presumed based on his substantive argument that he is referring to the modified special charge of justifiable homicide given by the trial court. The record shows no deficiency on the part of defense counsel.    He requested a special jury charge that encompassed Louisiana Revised Statute 14:20(A)(4)(a), but the State's objection was sustained and a justifiable homicide charge on the defense of others was read to the jury. Trial counsel noted his objection for the record and proffered the special jury instruction.[35] The record demonstrates counsel's efforts to have the justifiable homicide instruction on unlawful entry given to the jury.    Counsel's performance cannot be deemed constitutionally deficient simply because he was unsuccessful.    *Martinez v. Dretke*, 99 F.

---

[34]   Although raised only in the context of ineffective assistance of appellate counsel, the Court notes that with respect to Polkey's argument that the indictments were not returned in open court, he has failed to carry his burden of proof.    He offers nothing to substantiate his claims that the indictment was not returned accordingly.    *See Clark v. Collins*, 19 F.3d 959, 964 (5th Cir.1994) (noting that *habeas corpus* petitioners claiming ineffective assistance of counsel bear the burden of proof); State Rec., Vol. 1 of 7, Indictment (signed by the jury foreperson); *see also* State Rec., Vol. 5 of 7, Minute Entry, 3/22/07 (reflecting a true bill returned 3/31/06).

[35]   State Rec., Vol. 4 of 7, Trial Transcript (March 22, 2007), pp. 68-70.

App'x 538, 543 (5th Cir. 2004).

Finally, Polkey asserts that counsel was ineffective for failing to conduct adequate pretrial investigation and interview witnesses in order to present a competent defense.   To satisfy *Strickland*, a petitioner "'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"   *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)); *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998).   The petitioner must provide factual support demonstrating what exculpatory evidence further investigation would have revealed. *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07–6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).   A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result.   *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696).   For these reasons, brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice.   *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

In this case, Polkey offers nothing but broad and purely speculative assertions that further investigation and interviews with "the prosecution's witnesses" would have

established "crucial information regarding any un-sworn statements that implicated Polkey… [so that] counsel could have prepared and presented a viable defense."[36]   Polkey maintains that "[b]ecause counsel failed to investigate and interview any of the witnesses, he did not learn the crucial information that he needed to avert the introduction of inadmissible, damaging hearsay testimony."[37]   Polkey's brief in support references nothing in the record to support these allegations.   As the state district court correctly found, Polkey's vague and conclusory assertions do not suffice absent proof to demonstrate ineffective assistance on the part of trial counsel.   Polkey's argument falls well short of proving the existence of exculpatory evidence that would have been found through further investigation.

Furthermore, Polkey has brought forth no evidence establishing that there is a reasonable probability that further investigation would have revealed any information which, if it had been discovered and presented at trial, would have resulted in a different outcome at trial.   Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation and his claim necessarily fails. *Everett v. Louisiana*, Civ. Action No. 08–4745, 2009 WL 1971370, at *5 (E.D. La. July 7, 2009); *see also Twillie v. Rader*, Civ. Action No. 12–1421, 2012 WL 3990392, at *5 (E.D. La. Aug.14, 2012), *adopted*, 2012 WL 3990490 (E.D. La. Sept. 10, 2012).   Accordingly, Polkey's claims

---

[36]   Rec. Doc. 4-1, p. 32.

[37]   *Id.*

that trial counsel was ineffective do not merit *habeas* relief.

The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Duhamel v. Collins,* 955 F.2d 962, 967 (5th Cir. 1992) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)).   In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).   Failing to raise every meritorious claim on appeal does not make counsel deficient.   *Green v. Johnson,* 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989)).   When alleging ineffective assistance of appellate counsel, a petitioner "must show that the neglected claim would have had a reasonable probability of success on appeal." *Duhamel*, 955 F.2d at 967.   Courts give great deference to professional appellate strategy for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["] *Jones v. Barnes*, 463 U.S. 745 (1983).   This is true even where the weaker arguments have merit. *Id.* at 751–52.   The applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal. *See*, *e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

Here, appellate counsel, Ms. Sollars, reasonably determined that it was not in Polkey's best interest to raise either sufficiency of the evidence or any claim regarding the allegedly

deficient indictment on appeal.    Ms. Sollars testified at the evidentiary hearing as to her handling of the appeal and these issues in particular.[38]    Upon her review of the record, she pursued the trial court's failure to give the requested special jury instruction on justifiable homicide as the stronger claim with potential merit.    Rather than argue that the evidence was insufficient to convict him of second-degree murder because the State failed to prove the elements of the offense, appellate counsel reasonably focused on the justifiable homicide defense theory and deficiencies associated with the instructions.    Appellate counsel also reasonably decided against challenging the validity of the indictment, considering defense counsel himself chose not to pursue the motion to quash pretrial in order to preserve the claim on appeal, and ineffective assistance claims generally should be raised on post-conviction relief.

Moreover, for the reasons previously discussed in this report, the evidentiary sufficiency and indictment claims plainly lack merit.    Thus, even assuming *arguendo* that appellate counsel's omission of the claims was deficient, Polkey has failed to show a reasonable likelihood of a different result on appeal had the claims identified above been raised.

For the foregoing reasons, Polkey has not demonstrated that the state court's decision rejecting these ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme

---

[38]  State Rec., Supp. Vol. 1 of 1, Transcript (2/19/14), pp. 17-20.

Court of the United States.

**RECOMMENDATION**

**IT IS RECOMMENDED** that Polkey's application for federal *habeas corpus* relief be

**DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United

Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[39]

New Orleans, Louisiana, this  9th  day of  December , 2016.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[39] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.